ALBERTO R. FUERTES, Plaintiff and Petitioner, *v.* FULGENCIA ARZÓN MÉNDEZ, Defendant and Respondent.

No. 12083. Submitted March 5, 1959.—Decided August 17, 1959.

*Juan Nevares Santiago* for petitioner. *Francisco Torres Aguiar* for respondent.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The issue in this proceeding is whether the purchaser of a hereditary interest in a particular rural property can redeem the portions sold later by the other coheirs to a third person.

Carmen, Juan José, Fernando and Francisca González Pedraza, and Ernesto Cuebas, together with four other persons, were owners each, by hereditary title, of one-ninth of a property of 161 cuerdas situated in the Municipality of Naguabo.

On March 8, 1956 coheiress Carmen González Pedraza sold her interest in that real property to petitioner Alberto R. Fuertes, who recorded it in his name in the Registry of Property. When the term to exercise the right of legal redemption against him had expired the purchase made by Fuertes received the consent of the remaining coheirs, the same becoming final and Fuertes the absolute co-owner of one-ninth of the property.

On May 5, 1956 the coheirs Juan José, Fernando and Francisca González Pedraza and Ernesto Cuebas,[1] sold their

---

[1] The record shows that Ernesto Cuebas' undivided interest belonged to him and his wife Sara Luisa González and that both assigned it to the defendant.

shares to respondent Fulgencia Arzón Méndez. Four days later, Fuertes filed a complaint in the Superior Court, Humacao Part, against Mrs. Arzón Méndez to redeem the four-ninths of the property purchased by her, setting forth in his complaint as follows:

"The plaintiff alleges:

"1. That the plaintiff *is owner of an undivided share equivalent to one-ninth* of the property which is hereinafter described, defendant Fulgencia Arzón Méndez being owner of four-ninths thereof, Germán Morales García, the heirs of Antonio González, María González Pedraza and José González Pedraza each being owner of one-ninth of said property. The property is described as follows: (description).

"2. That the plaintiff purchased his one-ninth share from Carmen González Pedraza (*sic*) by deed No. 65 executed March 8, 1956, before Notary Faustino R. Aponte and which is recorded on page 139 of volume 45 of Naguabo, property No. 198 inscription ———.

"3. That by deed No. 102 executed May 5, 1956, before Notary Faustino R. Aponte *the defendant purchased an undivided share of four-ninths of the aforesaid property* from Ernesto Cuebas and his wife Sara Luisa González, Juan José González, Fernando González and Francisco González for the sum of eight thousand ($8,000) dollars.

"4. That Ernesto Cuebas, Sara Luisa, Juan José, Fernando and Francisca González were owners of four-ninths of said property and *sold their interest therein to a stranger such as the defendant.*

"5. *That availing himself of the right of legal redemption* the plaintiff wishes to subrogate himself in the place of the purchaser-defendant under the same conditions stipulated in the contract of the sale and shall reimburse to the latter, not only the price of the sale, but also the expenses of the contract and any other lawful expenses arising from the sale and the necessary and useful expenses incurred in the property sought to be redeemed which property is still today in an undivided state, said expenses being estimated by the plaintiff in the sum of $50 but plaintiff being willing to pay any amount in excess thereof.

"6. *That today* date (*sic*) *the plaintiff has deposited* in the Humacao Part of the Superior Court of Puerto Rico *the purchase*

*price of eight thousand dollars* in a certified check and also $50 more which he estimates as the maximum lawful amount of the expenses of the contract of sale, totaling $8,050, both checks for the defendant, in the name of the clerk of the court.

"7. That the plaintiff *agrees and binds himself not to sell for four years* the interest in the property sought to be redeemed which promise he solemnly makes so that it can be subject to any pronouncement in whatever judgment might be finally entered."—Italics ours.

The defendant appeared and moved to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action. After the motion was argued the lower court considered that the action exercised by Fuertes was the hereditary redemption authorized by § 1020 of the Civil Code and dismissed the complaint with costs and attorney's fees on plaintiff on the ground that "the plaintiff in this case is a stranger to the estate and the coheir's right to exercise the action of redemption is not transferable to him because he acquired said interest by inheritance."

The plaintiff appealed and in his brief alleges that the trial court erred in deciding that he lacked the right to exercise the legal redemption and in the application of law to the facts of the case.

■■ Plaintiff-petitioner is right. The theory of the lower court as to the nature of the action is manifestly erroneous and untenable.

A simple reading of the allegations of the complaint already copied suffices to conclude that redeemer Fuertes was using his juridical status of cotenant or co-owner to file his action. None of those allegations take to the interpretation that his vendor, coheiress Carmen González Pedraza had transferred her right of redemption to him nor that he expected to be considered a coheir for the purposes of seeking the redemption pursuant to § 1020 of the Civil Code.[2]

---

[2] This section reads thus:

"If any of the heirs should sell his hereditary rights to a stranger before the division, all or any of the coheirs may subrogate himself in

483

In the course of the discussion of the motion to dismiss, the plaintiff's attorney said that he was litigating as "co-owner of that property"; and counsel for purchaser-defendant stated, in part, that it "involves a redemption under § 1412, that is, right of redemption of co-owners." [3] The court in its decision stated:

"The plaintiff's contention is that pursuant to § 326 of the Civil Code, 1930 edition (defining common ownership of property) as well as § § 1411, 1412, and 1414, the action of redemption lies since there is a community of property and therefore when the defendant acquired four-ninths thereof from the other co-owners of the property the latter have, pursuant to said sections, the right to redeem the portions sold."

If the intention of plaintiff was to redeem as co-owner, as it actually was, it was the duty of the trial court to consider the sufficiency of the complaint in the light of its own allegations. Although Fuertes was, and still is, a stranger to the estate of which his vendor Carmen González Pedraza formed part, yet at the time when the other coheirs sold 4/9 thereof to Mrs. Arzón Méndez he was not a stranger to the community of property existing in that property. His share in the title thereof had already been consolidated. The fact that he had derived his title from a coheiress did not weaken his right of redemption in his capacity as co-owner of the 4/9 interest sold subsequently to the defendant by other coheirs. [4]

---

the place of the purchaser, reimbursing him for the value of the purchase, provided they do so within the period of a month, to be counted from the time they were informed thereof."

[3] In its first paragraph this section provides:

"A co-owner of a thing held in common may exercise the redemption in case the shares of all the other co-owners, or of any of them, are sold to a third party."

[4] Under the circumstances expressed in the complaint not even the other four coheirs who continued in the community and never sold, could successfully exercise the hereditary redemption of § 1020. It is exclusively within the province of the coheirs to make use of the power granted by this section, only in the event that, before dividing the estate, an heir has sold in whole or in part *his hereditary right*, that is, the hereditary right considered incorporeally and abstractly as a universality or group of indeterminate obligations, actions and rights acquired and assumed by

Fuertes never purchased from Carmen González Pedraza, in whole or in part, her hereditary right in the succession of her original predecessor, nor filed his action as assignee or owner of said hereditary right; she conveyed to him only her individual one-ninth share in the rural property described in the complaint, not an undivided, ideal or indeterminate interest in the universality of the estate, nor her untransmissible legal status of heiress.[5] After the term for the

---

the heir upon accepting the inheritance. The viability of hereditary redemption which is a special and peculiar privilege of which the universal title of heir partakes at the time of making the sale and at the time it is exercised, is subject to the existence of that essential element and indispensable antecedent. If the object of the sale made by the heir in favor of a stranger consists in a quota-part or concrete interest in a certain rural property, as was the sale of 4/9 of said property in favor of the defendant, § 1020 no longer applies, nor would it apply if upon adjudicating undividedly in the partition one of the several real properties in the estate to a group of heirs, any one of them would sell his interest in the estate to a stranger or if the vendor were the widower who only conveyed to the stranger his share in the community property. However, since the undivided estate is a community, by force of law, of a specific character, which temporarily joins and unites its members more forcefully than the ordinary common ownership and being a special intermediate type of community of property, the heirs could, as co-owners, in cases like the present one and in those to which we have referred, have recourse to the right of legal redemption of co-owners governed by §§ 1411, 1412, and 1414 of the Civil Code. The hereditary redemption is but a specific case of the right of redemption of co-owners, a modality or variety thereof. *Benítez v. Díaz*, 28 P.R.R. 628, 632 (1920); *Vellón v. Central Pasto Viejo*, 34 P.R.R. 226, 227 (1925); Judgments of the Supreme Court of Spain of February 12, 1904, November 5, 1908, May 14, 1912, February 7, 1944, June 11, 1951, March 27, 1953, June 8, 1956 and July 7, 1956; 4 Castán, *Derecho Civil Español* (8th ed.), 142 *et seq.;* I. J. Santamaría, *Comentarios al Código Civil* (1958 ed.), 994; VII Manresa, *Código Civil Español* (7th ed.), 809; XVIII Scaevola, *Código Civil* (2d ed.), 674; V Valverde, *Derecho Civil Español* (4th ed.), 585; V. Borrell y Soler, *Derecho Civil Español* 520 *et seq.;* VI Martínez Ruiz, *El Código Civil* 481; Calvo y Camina, *El Retracto de Coherederos,* II *Revista de Derecho Privado* 175 *et seq.*

[5] On this situation Manresa comments, *op cit.* at 815:

"(h) Will *the purchaser of the hereditary right* be considered a coheir for the purposes of exercising redemption against another purchaser? We believe not. The right of redemption is most personal and therefore, not transmissible. The accepting coheir has that right, but if he sells *his hereditary interest* he loses on his part the right of redemption because he ceases to be such coheir, and said right does

remaining coheirs to redeem had expired, there arose a situation of co-ownership with regard to him within which it is most fitting to exercise the right of redemption of co-owners granted to every co-owner. Despite the fact that redemption is considered unanimously by the jurisprudential and scientific doctrine as an exceptional right of strict construction and rigorous application,[6] our Civil Code makes no distinction or exclusion whatever, to grant it, between a co-owner who is such because he purchased his interest in the thing held in common from a member of a hereditary community and one who purchased it from a member of an ordinary community.[7]

In order that an action for legal redemption by co-owners may be allowed it is necessary:

1. That there be a community of property; the action be filed by a co-owner and it be an alienation on the part of the thing held in common in favor of a stranger to the community. §§ 1411 and 1412, Civil Code; *Rosaly* v. *Ríos*, 63 P.R.R. 801, 811 (1944).

2. That the complaint be filed within nine days counted from the date of record of the conveyance in the Registry of Property (not from the date of entry) or in default thereof from the time the redeemer may have had knowledge of the execution of the deed of sale, or from its consummation.

---

not pass on to the purchaser because it is not transmissible." Italics ours.

[6] *Felici* v. *Ribas*, 11 P.R.R. 517 (1906); *Vellón* v. *Central Pasto Viejo*, *supra* at 233; *Noble* v. *Rodríguez*, 69 P.R.R. 447, 456 (1948); Castán, *op. cit.* at 165; Borrell y Soler, *op. cit.* at 268.

[7] As Sánchez Román says on the page and work cited by us:

" . . . the law does not deny (redemption) to the same third person if the sale would have been final for failure to exercise that right."

In its Judgment of November 14, 1955 the Supreme Court of Spain stated: "The right of redemption of co-owners originates in the juridical situation of co-ownership or community of property irrespective of the title by which the cotenants reached such co-ownership, and it emerges at the moment when one of these co-owners sells his right to a stranger to the community."

—§ 1414, Civil Code; *Gómez* v. *Collazo*, 67 P.R.R. 453, 458 (1947); *Rosaly* v. *Ríos*, *supra* at 808; 4 Castán, *Derecho Civil Español, Común y Foral* (8th ed.), 146.

3. That the plaintiff deposit together with his complaint, in the court of jurisdiction (1) the real or true price of the sale, (2) the expenses of the contract, (3) any other lawful payment made by reason of the sale, and (4) the useful and necessary expenses incurred by the thing sold, if known, and if unknown, to furnish bond to insure such deposit when it becomes known. —§§ 1407 and 1415, Civil Code; *Llambías* v. *Pagán*, 65 P.R.R. 424, 435 (1945); *Martínez* v. *Pirallo*, 61 P.R.R. 87, 88 (1942); *González* v. *Acha et al.*, 21 P.R.R., 124, 126 (1914); and

4. That the redeemer bind himself not to sell his interest in the property he redeems for four years. —*Quiñones* v. *Alcaide*, 72 P.R.R. 670, 674 (1951) and cases cited at 674.

The plaintiff has fully complied with all these requirements and under the theory of right of legal redemption of co-owners all the facts or requirements necessary for that type of action appear in his complaint.[8]

In view of the foregoing the judgment appealed from will be reversed and the case remanded to the lower court for further proceedings compatible with this opinion.

Mr. Justice Serrano Geyls did not participate herein.

---

[8] The respondent calls our attention to the judgment entered by the Supreme Court of Spain on May 6, 1931, published in volume 200, pp. 68–79, of the *Revista General de Legislación y Jurisprudencia*. We have examined and considered it carefully. The facts revealed by the nine whereases of that decision are not analogous to the facts set forth in Fuertes' complaint, with the minor exception that the former involved the redemption of an ideal fraction of "one-ninth" of a hereditary right. The plaintiff therein, Anastasio de la Oliva, was a purchaser to whom the vendor had sold only the ideal or indeterminate interest which might correspond to her in a certain estate and his right did not consist "of any title over the property like those which the plaintiff seeks to redeem" and his right of redemption was not recognized because he lacked the requirement of being a co-owner of the property.